(110 So. 278)

**DILLARD v. WHEELOCK.** (6 Div. 439.)

(Supreme Court of Alabama. Nov. 4, 1926.)

1. **Joint adventures** ⬅⟹7—One of two joint adventurers, on failure of other to keep promise to third person, may endeavor to carry out agreement without prejudicing his rights.

When two persons, associated in common enterprise, give word to third persons, acting in good faith, and one, holding advantage because of possession of instrument of authority, refuses to make good his part of their promise, the other may, without prejudice to his rights, endeavor to carry forward plans agreed upon and prevent, if possible, breach of faith toward others.

2. **Trusts** ⬅⟹101—Land purchased by agent held subject to constructive trust in favor of one who was to share in commissions.

Where defendant, having agency for sale of land, employed complainant to assist for share of commissions, and complainant produced customer, ready, able, and willing to perform, but defendant purchased land for self, using his commissions to reduce purchase price, he held property subject to constructive trust in complainant's favor for one-third commissions allowed in reducing price.

3. **Trusts** ⬅⟹375(1)—Decree declaring constructive trust, in all land purchased by agent, in favor of complainant with whom he was to share commissions, held erroneous where it cast a cloud on lands of one not a party to suit.

In action to declare a resulting trust in lands arising from equities in contract to share commissions in sale thereof, decree giving constructive trust to complainant to extent of two-fifteenths interest in all lands involved, subject to mortgage, held erroneous, where it cast a cloud on lands of one not a party to suit.

4. **Brokers** ⬅⟹66.

Broker, under contract, by which another was to share commissions with him in sale of lands, on performance by him, held not entitled to recover potential profits he would have derived on consummation of trade, and actual profits derived from later transactions.

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Bill in equity by Charles F. Wheelock against J. W. Dillard. From a decree for complainant, defendant appeals. Reversed and remanded.

A. F. Fite, of Jasper, and C. H. Roquemore, of Montgomery, for appellant.

---

⬅⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. F. Finch, of Lake Worth, Fla., and Vassar L. Allen, of Birmingham, for appellee.

Respective counsel discuss the facts and the questions raised, but without citing authorities.

BOULDIN, J. The bill was filed by Charles F. Wheelock against J. W. Dillard to declare a resulting trust in lands, because of the equities growing out of a contract between them to share the "commissions or profits or other compensation" derived from a sale of mineral interests in lands of Lost Creek Coal & Mineral Land Company, known in briefs as Lost Creek Company.

The equity of the amended bill was sustained on former appeal. Wheelock v. Dillard, 211 Ala. 599, 100 So. 840.

On final hearing on pleadings and proof, complainant was granted relief. Defendant appeals.

In reviewing the decree as related to the pleadings and proof, we first give our conclusions of fact upon a study of the record.

The essential features of the contract, dated November 24, 1919, are: Recital in the preamble that Dillard had a contract with the owner, whereby he was to be paid "a commission for the sale of all or a part of the lands"; that Wheelock "will lend such aid and assistance as shall lie in his power to effect such sale"; that, in the event of a sale of "said lands, or any part thereof, by him (Dillard) under any agreement with said company," Wheelock should receive one-third "the commissions or profits or other compensation" coming to Dillard in connection with said "sale or sales."

Without here giving details of evidence, we find this contract was not subject to approval of unnamed associates of Dillard, and that it was disapproved and notice thereof given to Wheelock. The subsequent acts of both parties, including correspondence, negative such contention on the part of appellant.

The Lost Creek Company owned some 6,300 acres of mineral lands, The only committal in writing binding on the company at the time was an agreement to allow $1.50 per acre for the sale of the entire holdings at $15 per acre, or a sale to net the company $13.50 per acre. Tentative verbal understandings had existed to receive and pass upon offers submitted by Dillard and to give him exclusive agency in that regard until further notice. But, by contract, the parties thereto clearly became associated in a joint adventure to sell the lands, or any part thereof, under any present or future arrangement with the company, and to share in the profits or commissions.

On February 9, 1920, Dillard took an option on 2,800 acres of the land at $15 per acre net to the company. We conclude from the whole evidence that this option was taken on lands selected and listed by Wheelock, a mining engineer, having some knowledge of the sale value; that it was taken, on his advice, for the purpose of getting control of these selected lands; that it was not an independent deal by Dillard in his own behalf; that it was not for purposes of an investment, but as an aid to the sale; and that, at the time and thereafter, Wheelock was recognized as entitled to share in the benefits of this option.

On March 1, 1920, Wheelock negotiated an agreement between Dillard and Moss & McCormack, in substance, as embodied in a written proposition drawn at the time, tendered to Dillard for signature, with check for the $500 cash payment. We find Dillard had verbally authorized and personally assented to and agreed to sign such agreement.

In effect, the agreement was to assign the option to Moss & McCormack for $11,250, payable $500 cash, and the balance when titles were approved and deed made under the option. It bound Moss & McCormack to exercise the option and take the property covered thereby. At the same time, it contemplated an effort of Moss & McCormack to purchase all the holdings of the Lost Creek Company, in which event the compensation going to Dillard and Wheelock should be increased to $15,000. Moss & McCormack were ready, able, and willing to comply with their agreement. Dillard declined to sign the agreement or accept the check. Soon thereafter he arranged with Faucett & Thomas, of Prattville, to furnish $10,000, which, with $500 theretofore paid by Dillard, met the cash payment called for by the option. Dillard then closed the deal with Lost Creek Company, taking a deed in his own name, giving a mortgage for $31,500, evidenced by three notes of $10,500 each, due in one, two, and three years, with interest at 6 per cent. Pursuant to tentative understanding, Dillard later executed a deed to Faucett & Thomas to a three-fifths interest in the property, retaining two-fifths interest. At this stage, we deal with a question of estoppel, or coming into equity with unclean hands, set up in the answer and evidence.

The evidence sufficiently discloses that, upon refusal of Dillard to carry out the deal with Moss & McCormack, Wheelock proceeded with negotiations in behalf of Moss & McCormack, seeking to acquire the property for them from the Lost Creek Company by purchase or by acquiring the stock of the company. We conclude Dillard is not in position to deny Wheelock's interest under the option, because of this, for the following reasons:

The move to take over the property by Dillard and shut out Wheelock was in fraud

of the latter's rights in the option, and contrary to the purposes for which it had been obtained.

The proposal of Moss & McCormack to take over the entire property was in harmony with the agreement Dillard had negotiated through Wheelock. Wheelock, as the equitable owner of a joint interest in the option, had been morally committed to Moss & McCormack, with Dillard's knowledge and consent. Dillard had, as we find from the weight of the testimony, suggested and advised during these negotiations that the practical way to purchase the lands was by purchase of the stock. His profits or commissions were cared for, in either event.

[1] We think it a safe rule to assert that when two persons, associated in a common enterprise, give their word to third persons, acting in good faith, and one, holding the advantage by reason of having the instrument of authority in his hands, refuses to make good their promise, the other may, without prejudice to his own rights, endeavor to carry forward the plans agreed upon and prevent, if he may, a breach of faith towards others. Dillard finally closed the deal in his own name April 30, 1920, and, on May 15th thereafter, Wheelock advised him by letter of his readiness to continue to co-operate in disposing of the property to mutual advantage.

[2] We agree with the trial court in holding that Wheelock, in good faith, reasonably met his obligations under the original contract, expending time and money in the promotion of the common enterprise. The relations established by the contract and subsequent endeavors bring the parties within the rule declared in King v. White, 119 Ala. 429, 24 So. 712, as follows:

"Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of the confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of such position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relations existed."

Any profit derived from the option and subsequent dealings thereunder was, in equity, subject to the terms of the contract of November 24, 1919. For Wheelock's one-third of such profits represented in the lands or proceeds derived therefrom, equity declares a resulting trust therein, a trust ex delicto or ex maleficio. Wheelock v. Dillard, 211 Ala. 599, 100 So. 840; Scottish U. & N. Ins. Co. v. Dangaix, 103 Ala. 394, 15 So. 956; Kent v. Dean, 128 Ala. 609, 30 So. 543; 2 Pom. Eq. §§ 1053. 1055.

The working out of this relief, under the pleadings and evidence, is the more difficult feature of the case.

[3] The trial court decreed complainant a two-fifteenths interest in the lands covered by the option and deed made pursuant thereto, subject to the mortgage of $31,500 for unpaid purchase money, conditioned upon Wheelock's contributing one-third of $500, the original cost of the option paid by Dillard.

The theory upon which such decree is based is that Messrs. Faucett & Thomas put up $10,000 of the cash payment and Dillard only $500, the first cost of the option; that Dillard conveyed three-fifths to Faucett & Thomas, leaving him two-fifths, subject only to the unpaid purchase money, two-fifths of the equity of redemption at a cost of $500, in which Wheelock should have a share of one-third or two-fifteenths of the whole.

This form of decree deals with a supposed status as of the date of the conveyance of the property by Lost Creek Company to Dillard, followed by his deed to Faucett & Thomas. The amended bill, filed August 14, 1923, brings forward a sale of some 200 acres of this land to Galloway Coal Company, September 30, 1922, at and for the sum of $17,500 cash. Of this, according to Mr. Dillard's answers to interrogatories, $2,500 was retained by himself and associates—$1,000 to him for expenses and $1,500 to the company for development. $15,000 was paid on the purchase-money mortgage. This was applied first to attorney's fees and costs accrued thereon, leaving a balance of $11,158.05 credited on the mortgage debt. The balance on the mortgage debt October 1, 1922, is stated by him to be $24,998.66.

Wheelock had, in the beginning, sought to interest the Galloway Coal Company in the tract of lands; this small portion lying contiguous to certain mines brought a special price far in advance of the general values of the tract. By the amended bill, Mr. Wheelock elects to confirm that deal and seeks the benefit of the profit derived therefrom. We may add the court properly denied the relief prayed on the assumption that the excess over $15 per acre for this land represented profit made on the entire deal. In any event, the court should not have decreed complainant a two-fifteenths interest in this 200 acres of Galloway Coal Company. Though not a party to the suit, it casts a cloud on this company's title. This courts should avoid. If otherwise correct, the decree should have been limited to the remaining lands, subject to the mortgage for such reduced amount as remained or should have remained unpaid, after such sale.

But we are by no means sure whether Dillard acquired a two-fifths interest in the

lands, subject only to the mortgage debt. The deed to Faucett & Thomas is not in the record, and the testimony, not being taken with a view to the form of relief granted by the court, is meager as to the exact terms of that deal. We cannot be sure but that, on a resale of the property, it was contemplated that all the parties (Faucett & Thomas and Dillard), were to be refunded, first, the money put into it, and the profits divided two-fifths to Dillard and three-fifths to Fau-cett & Thomas. In such event, Dillard's profit would await a repayment of the whole purchase money.

[4] The former opinion (211 Ala. 599, 100 So. 840) sets forth the nature of relief prayed by the amended bill. The trial court prop-erly held Mr. Wheelock could not recover the potential profits he would have derived by a consummation of the trade with Moss & McCormack, and also the actual profits de-rived from later transactions.

The theory that the purchase price to Dil-lard was reduced by the amount of his con-templated commissions, and thus his com-missions became invested in the land for joint benefit, is not borne out by the evi-dence.

The relief in equity arises from a joint in-terest in the option, the profits derived there-from, represented in the land or its pro-ceeds on proper accounting.

Certain transactions had since the filing of the amended bill, and not covered by the pleadings, are nevertheless brought out in the testimony.

It appears the remaining lands, some 2,600 acres, were later sold to Mr. Musgrove at $20 per acre or thereabouts. He took an as-signment of the Lost Creek Company mort-gage and a deed from Dillard and Faucett & Thomas.

It appears, in view of the conflicting claims and litigation between Dillard and Wheelock, Faucett & Thomas accepted a refund of their money ($10,000) and withdrew from further connection with the property or its proceeds. This sum was paid them from the proceeds of the sale to Musgrove. In this situation, it appears Mr. Dillard succeeds to the profits arising from the Musgrove deal. What Mr. Wheelock's attitude is toward this transac-tion, or, if ratified, what the result will be upon his share in the profits, the record does not disclose with any degree of certainty.

The cause will be reversed and remanded, with leave for the complainant to amend the bill to conform to the proof, or file an amend-ed and supplemental bill, as he may be ad-vised.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.