65 So.2d 709

### TANNER v. McCLURE et al.
### 1 Div. 476.

Supreme Court of Alabama.

Dec. 18, 1952.

Rehearing Denied June 18, 1953.

Holberg, Tully & Aldridge, Mobile, for appellant.

V. R. Jansen, Mobile, and J. B. Blackburn, Bay Minette, for appellees.

BROWN, Justice.

The appeal is by the defendant and cross-complainant from the final decree of the Circuit Court of Baldwin County, in Equity, granting complainants relief by rescinding the alleged contract of exchange of properties between the parties and ordering a reconveyance of the property owned by the complainants prior to and at the time of the alleged contract, the property consisting of their home, a house with ten rooms, located on two lots in a subdivision known as "Bon Air," according to a plat registered in Deed Book 156 N.S., p. 374, Mobile County, Alabama. The McClures conveyed this property, including all the furnishings in the house which were owned by Mrs. Briney, mother of Mrs. McClure, by warranty deed to the defendant in advance of any valid contract, but on the assumption that their verbal contract was valid. Rescission of the entire contract was decreed and the status quo restored in so far as practicable.

The original bill was filed by McClure and his wife against Callie Mai Tanner on December 1, 1948. The bill was amended on March 14, 1949, by making Addie Briney, who owned the household goods and furnishings in the ten room house as aforesaid, a party complainant. The bill as last amended was filed August 30, 1950, by the McClures and Addie Briney, as complainants, and alleged:

"That on, towit, the last day of June, 1948, the complainants were the owners of Lots 27 and 28 of Block 26 of Sub-

division of lots known as Bon Air according to a plat of same on record in the office of the Judge of Probate of Mobile County, Alabama, which was owned by them in fee simple subject to a mortgage indebtedness of approximately Thirty-four Hundred ($3400.00) dollars and which property was improved by a ten-room dwelling house completely furnished; that the respondent advertised for sale and claimed to own a parcel of land fronting on Perdido Bay for a distance of 336 feet located between the paved highway and Perdido Bay at or near the Eastern end of the paved road to Bear Point in Baldwin County, Alabama, improved by a furnished lodge or hotel sometimes called Higdon's Lodge or Bear Point Lodge.

"Complainants further show that respondent proposed to the complainants that she would convey to them the parcel of land and the improvements thereon consisting of said hotel or lodge together with all furniture, fixtures and equipment then located in said building at the agreed valuation of Sixty Thousand ($60,000.00) dollars to be paid by the transfer to the respondent by the complainants of the property in Bon Air in Mobile County, Alabama, at a valuation of Fourteen Thousand Five Hundred ($14,500.00) dollars, less any encumbrance paid or assumed by the purchaser and the unpaid balance of the purchase price to (be) paid at One Hundred Fifty ($150.00) dollars per month together with interest at the rate of five per cent per annum payable monthly and the respondent as an inducement to the complainants for the purchase of said property represented:

"(a) That she was operating the lodge as a summer hotel and for the summer season she had guests up to the capacity of the establishment and that she would endeavor to aid the complainants in keeping these guests and would assist the complainants in the operation of the lodge as a commercial enterprise;

"(b) That the property which she offered to sell the complainants was free from any encumbrance and a good merchantable fee simple title reserving security for the unpaid portion of the purchase price would be delivered to the complainants with the possession of the property;

"(c) That the land fronted for 336 feet along the Northern shore of Perdido Bay;

"(d) That an abstract of title or title guaranty would be furnished the complainants showing a good merchantable title to said property;

"(e) That free and open access to said property from the paved highway would be provided across other lands of the respondent.

"That each of said representations were material and induced the complainants to accept said offer.

"Complainants further show that they accepted the offer of the respondent, inspected the premises, procured title insurance in favor of the respondent as to the property in Mobile County and duly executed and delivered a deed of conveyance to the respondent transferring the Mobile County property to her free of all encumbrances except the unpaid balance of a mortgage of approximately Thirty-four Hundred ($3400.00) dollars making a net down-payment to the respondent under said purchase agreement of Eleven Thousand One Hundred ($11,100.00) dollars, that the complainants went into possession of the lodge and paid to the respondent the sum of One Hundred Fifty ($150.00) dollars per month with interest at five per cent per annum on the unpaid balance, said possession beginning on, towit, the 17th day of June, 1948, and continuing to the filing of the original complaint in this cause and the respondent failed and refused to furnish to the complainants an abstract of title or title insurance showing a good title in the respondent for the property in Baldwin County above described; that the complainants made a search of the records in Baldwin County and discovered encumbrances against said property as shown by the exhibits attached to the complaint in this cause as first amended and by reference incorporated in this amended complaint as fully as though set out herein being a recorded mortgage in favor of State Bank of Elberta, Alabama, and a copy of a claim of lien for labor and material in favor of

G. H. Bonnie which copies are made by reference Exhibits A and B to this amended complaint.

"Complainants further show that following delivery of possession to them of said lodge property, the respondent constructed upon the adjoining property facilities for the care of guests and began to operate a competitive business to the complainants, reserving to herself all guests and their business, that the property owned or standing in the name of the respondent had no frontage on Perdido Bay but was in fact separated from the water front by a dedicated roadway which the complainants discovered, through employees of the Highway Department entering said land and establishing the boundaries thereof, that the free and open access to the highway was in fact a driveway used by the respondent in travel to and from cottages operated by her on adjoining land which access was frequently hampered by parked automobiles and on occasions by members of the family of the respondent interfering with and even denying access to the complainants across said property, and all guests of the lodge after complainants operation had to go and come through an area operating competitive accommodations by a business operated by the respondents. Complainants charge that the defects in the title of said property were known to the respondent, that the respondent well knew she had no title to water frontage, that the respondent knew that she intended to operate a competitive business to the complainants and such knowledge was concealed from the complainants while actual representations to the contrary were made by the respondent.

"Complainants further charge that after delivery of possession of the property in Baldwin County, the respondent continued to enter the premises delivered to them, from time to time and during the summer of 1948 without the consent of the complainants she removed from said lodge personal property displayed to the complainants as furnishings in said lodge at the time of the delivery of possession, viz; a Gas Refrigerator; two mixers, two marble topped tables, one stool and miscellaneous small articles, that the complainants demanded of the respondent a conveyance of the property delivered to them, always admitting the right of the respondent to a reservation of a lien or the security of a mortgage for the unpaid balance of the purchase price and no conveyance was given to the complainants and no evidence of said purchase in writing excepted, a contract which the parties agreed was incorrect and which the respondent kept in her possession, that up to the date of the filing of the original complaint in this proceeding the complainants fulfilled all obligations on their part under the purchase agreement and paid all payments falling due and the complainants offer to do equity and offer to pay all amounts and charges and perform all obligations which may be proper to be performed by the complainants under the decree of this court and although many demands have been made on the respondent and although a sufficient time has elapsed for the respondent to perform her agreement, the respondent has always failed and refused to perform the obligations described in the foregoing paragraphs."

The bill prayed that the respondent be required to specifically perform the contract and that a conveyance be made to the complainants of the property offered for sale on the terms offered, and in the alternative, should the respondent be unable to comply with the terms of the contract and the material terms thereof, that the contract be rescinded and the parties restored to their status at the time negotiations began for the sale and transfer of the said properties.

The record shows that the testimony was taken *ore tenus* before the court on July 27 and 28, 1949. After argument by counsel on November 12, 1949, the cause was submitted for final decree on the pleadings and proof taken in open court by the court reporter and duly transcribed by him and filed in the record. On March 24, 1950, more than four months after the argument and more than seven months after completion of the testimony, the court entered a final decree granting the complainants relief. This decree on motion of the defendant was vacated and set aside and on July 25, 1950, the complainants filed motion to resubmit

the cause for final decree. This motion was granted by the court on August 30, 1950, and a second final decree was entered on December 8, 1950.

The appellant's first contention is that by this delay there was a hiatus in the proceeding and the court lost jurisdiction of the case. This contention and the argument in support thereof is based on the provisions of Rule 68 of Equity Practice, Code of 1940, Title 7 Appendix, p. 1103, which provides:

"*Decrees; when rendered.* When a cause or matter has been submitted for a decree or order, such decree or order must be rendered and filed with the register within four months after the submission, or a resubmission shall be necessary."

The final decree entered December 8, 1950, recites:

"This cause coming on to be heard was submitted on Respondent and Cross Complainant's motion to strike the amendment to the amended bill of Complaint, which was filed in this cause on July 28, 1949, and for Final Decree on the Bill of Complaint, as last amended, the answer and cross bill of the Respondent and Cross Complainant, the answer by the Complainants and Cross Respondents to the cross bill, the testimony taken in open court before the Judge of the Court on July 28, 1949, transcribed by the official Court Reporter and filed in this cause, the arguments on such submission, which were regularly set and heard on November 12, 1949, motion to set aside final decree, order setting aside final decree, motion of Complainants and Cross Respondents to resubmit the cause, decree granting motion and resubmitting cause, and the Court having fully considered the pleadings, evidence and arguments, finds that prior to the filing of the original Bill of Complaint, William C. McClure and Elizabeth McClure, were the owners, subject to a mortgage lien securing an indebtedness of Thirty-four Hundred Dollars ($3400.00), of property in Mobile, Alabama. * * *."

It appears from the recitals in the final decree that the cause was submitted on motion of the respondent (appellant here) without objection to the court or motion to set aside the proceedings because of any hiatus in the procedure or want of jurisdiction in the court. Moreover, the provisions of Rule 68, supra, clearly contemplate a resubmission of the cause, where the former submission and decree have been set aside. We quote the following from an address by Judge Ira W. Jayne entitled "Tinkering with the Judicial Machinery", Vol. 36, No. 3 of the Journal of the American Judicature Society of October, 1952:

"The principal purpose of the judicial machine is to decide honestly, fairly and quickly the inevitable disputes which arise in our complex society. In the formative years of our two great civilizations which have grown up in America, the principal purpose was to establish the legal principles by which we should govern ourselves. This was a great accomplishment. And our law givers, lawyers and judges, building on the two foundation stones of the Roman law and the English common law, made possible the flexible parliamentary government, limited by judicial restraint and carried out by the executive under law. On this foundation we have built governments that preserve the individual's dignity and protect his independence.

"Our first duty is to maintain it— to preserve our judicial structure with trial by jury, presumption of innocence, prevention of self incrimination, and legal representation."

While speed is desirable and commendable in judicial decisions, thoroughness in understanding such complex controversies is not to be sacrificed to the detriment of the problems presented. The record before us in this case is composed of 278 pages, the evidence covering 216 pages of the record. The contentions of the appellant that the court was without jurisdiction to render the final decree because of a hiatus

148

in the proceedings, were clearly without merit.

Appellant's second contention is that the court of equity is without authority to rescind a contract for the sale of lands while the vendee remains in possession. It is conceded, however, that this rule has its exceptions. Elliott v. Boaz, 9 Ala. 772.

In this case the complainants made and fully complied with a contract, which provided for the exchange of their home for the habitation occupied by the respondent as a residence. At the first meeting of the parties, the complainants, looking to the execution of a written contract, which failed because the paper which was drawn did not state all the terms of the contract, conveyed their home in Mobile to the respondent by warranty deed and delivered the deed, which was recorded, and possession surrendered to the respondent. Respondent placed the house in the hands of an agent who collected the rents therefrom and at the time the amended bill was filed the defendant was offering the said property for sale and in order to prevent this, the bill sought a temporary injunction.

No written contract or conveyance was ever executed by the respondent to the complainants embodying all the terms of the agreement. They were given only temporary possession of the property and the evidence shows that before the bill was filed, they surrendered possession to the respondent, and the final decree of the court so recites,—that complainants surrendered possession and moved from the Baldwin County property before the suit was filed. Although McClure retained in his possession, or is alleged to have retained in his possession, a key to one of the doors of the lodge, he was denied entrance to the building to obtain his personal effects by the agent of the respondent. And on this evidence the court rejected the respondent's theory that possession was not surrendered before the filing of the bill. The testimony in the case, given *ore tenus,* supports this conclusion.

It would certainly be inequitable and unjust for the court to deny relief to the complainants in face of the fact that even though the respondent retained the title and possession of the complainants' home and its furnishings in Mobile, she refused to permit the complainants to enter and use the lodge on the Perdido Bay property. It is conceded, and we quote from brief under Proposition Two: "Although the initial prayer of the bill of complaint is for a specific performance of the contract, the alternative prayer is for a rescission and both the court and the complaining parties treated the complaint as one for rescission."

In Everett v. Pickens, 203 Ala. 322, 83 So. 33, 35, it was stated to be the law that: "Where there has been a clear act or declaration of rescission by the purchaser, made complete by tendering back to the vendor what has been received from him, so as to place him in statu quo, and the tender is refused by the vendor, the purchaser may retain possession of the property, and even use it—if such use is necessary to its safety and preservation—without thereby revoking his previous rescission. Smith v. Thomas, [201 Ala. 442] 78 So. 820. * * *"

The evidence shows that the respondent claimed to own water front property with riparian rights to use the lake or bay in connection with the lodge but the undisputed evidence shows that there was a strip of land fifty feet wide across the front of the respondent's property and the high-water mark of the bay to which she did not have title. The bill alleges and the court found from the evidence that the respondent through agent and otherwise represented that the property which she proposed to sell carried riparian rights and the court finds that the agent who first showed the complainants the property observed it and represented this to be a fact and such person was the agent of the respondent and so acting at the time. It also appears without dispute that the property was encumbered by materialman's lien and otherwise and that this encumbrance was not removed prior to the filing of the bill in this case. The evidence further goes to show, and the court finds as a fact, that the complainants were induced by these representations to undertake to exchange their

property in Mobile for the lodge and property on Perdido Bay and agreed to pay the difference. Complainants in fact carried out their part of the contract and conveyed their property in Mobile to the respondent, who was seeking to sell the same when the bill in this case was filed. It is familiar law, founded on common honesty, that,

"* * * 'He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood, and must answer in damages.' * * *" Harton v. Belcher, 195 Ala. 186, 70 So. 141, 142; Munroe v. Pritchett, 16 Ala. 785.

This principle of well established law has recently been reaffirmed and applied as a basis for the rescission of a contract for the sale of real property where the false statement and representation was made by the agent of the vendor. Hagood **v.** Knight, 257 Ala. 64, 57 So.2d 616.

The finding of facts by the trial court outlined in the final decree fully supports the decree granting the complainants relief.

Affirmed.

LIVINGSTON, C. J., and LAWSON and SIMPSON, JJ., concur.