# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46488

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2019 Term |
| | ) | |
| v. | ) | Opinion Filed: July 10, 2019 |
| | ) | |
| SHAWN JERRI COATS, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Richard D. Greenwood, District Judge.

The conviction of grand theft is <u>vacated</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Jenevieve C. Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

BRODY, Justice.

The malicious ingenuity of thieves is boundless. While the Legislature regularly passes new criminal laws in an effort to keep up with new scams in the electronic age, the question presented in this case is whether the State's good, old-fashioned charge of "theft" fits the thief's conduct. Shawn Coats, the defendant, was charged with eight different offenses after he took an elderly man's debit card and deposited fraudulent checks into the man's credit union account to create funds for a multi-day shopping spree at Walmart. After a jury trial, he was convicted of seven of the offenses, including grand theft of retail goods and fraudulent use of a financial transaction card.

On appeal, Coats contends that the jury did not have substantial evidence to convict him of grand theft of retail goods from an owner because Walmart was paid in full for the goods, and Morgan, the man from whom he obtained the debit card, never owned the purchases.

1

Alternatively, he argues that he was subjected to double jeopardy upon being convicted for both grand theft and fraudulent use of a financial transaction card, because fraudulent use is a lesser included offense of grand theft. We hold that there was not substantial evidence for the conviction of grand theft. While Idaho's theft statute is broad and covers many misdeeds, there must be a careful analysis of what was stolen and from whom before a charging decision is made and the jury is instructed. Because this case will be remanded to the district court with instructions to vacate Coats's conviction on Count 5, we do not reach the merits of Coats's double jeopardy argument.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Shawn Coats learned of Theodore Morgan's financial difficulties while visiting his residence one evening. Offering to help, Coats accompanied Morgan to an ATM late that night and gave Morgan a falsified check for $955 to deposit into his credit union account. Coats stood behind Morgan's shoulder while the check was deposited into the ATM. While they were there, Coats told Morgan that he needed $500 in cash and gave him another falsified check in the amount of $950 to deposit. Coats signed the checks with the name of another account holder and designated the funds as a "loan" to Morgan on the memo line. With around $2,000 in his once empty credit union account, Morgan withdrew $500 and gave it to Coats.

Following the ATM transactions, Coats asked Morgan if he could borrow his vehicle for a quick trip across town. Morgan reluctantly agreed and soon retired to bed. However, instead of merely going across town, Coats, armed with the knowledge of Morgan's PIN, took Morgan's debit card and used it to insert more false checks into the credit union account and made multiple purchases over a period of two days at Walmart, totaling approximately $5,000. After a few days of Coats's fraudulent spending spree, Morgan's credit union recognized the fraudulent activity and shut down the account.

After an investigation, the State arrested and charged Coats with eight offenses:

**Count 1:** Grand theft (I.C. §§ 18-2403(1), -2407(1)(b)(3), -2409) for wrongfully taking a financial transaction card from Theodore Morgan on or between June 28, 2015, and July 2, 2015;

**Count 2:** Grand theft (I.C. §§ 18-2403(1), -2407(b)(1), -2409) for wrongfully taking over $1,000 in cash from Theodore Morgan on or between June 29, 2015, and July 1, 2015;

**Count 3:** Forgery (I.C. § 18-3601) for a check on Kent Stevens's account payable to Ted Morgan in the amount of $975.00 to Mountain American Credit Union on June 29, 2015;

**Count 4:** Forgery (I.C. § 18-3601) for a check on Kent Stevens's account payable to Ted Morgan in the amount of $990.00 to Mountain American Credit Union on June 29, 2015;

**Count 5:** Grand theft (I.C. §§ 18-2403(1), -2407(b)(9), -2409) for wrongfully taking retail goods or services with an aggregate value over $50, stolen during three or more incidents, in a criminal episode up to three days, from the owner Theodore Morgan and/or Walmart, on or between June 29, 2015, and June 30, 2015;

**Count 6:** Forgery (I.C. § 18-3601) for a check on Linda Glass's account payable to Ted Morgan in the amount of $995.00 to Mountain American Credit Union on June 29, 2015;

**Count 7:** Criminal possession of a financial transaction card (I.C. §§ 18-3125(4), -3128) for knowingly obtaining goods and/or property from Walmart by using a fraudulently obtained financial transaction card on or between June 29, 2015, and June 30, 2015; and

**Count 8:** Criminal possession of a financial transaction card (I.C. §§ 18-3125(4), -3128) for knowingly obtaining goods and/or property from Fred Meyer by using a fraudulently obtained financial transaction card on June 30, 2015.

A three-day jury trial ensued. Kara Donaldson, a fraud investigator with Mountain America Credit Union, testified about her investigation into the forged checks and unauthorized purchases. She explained that Coats's activities caused Morgan's account to become overdrawn and a large negative balance resulted. The credit union allowed Morgan to apply for a "workout loan" to pay off the full negative balance in his checking account.

The jury found Coats guilty of all charges except Count 8. He was also found to be a persistent violator. Coats was sentenced to fifteen years, with five years fixed, for each of the seven counts, to be served concurrently.

Coats appealed his conviction and argued that the State failed to prove beyond a reasonable doubt that he committed grand theft of retail goods, and that he was subjected to double jeopardy by being charged with both fraudulent use of a financial transaction card and grand theft. The Idaho Court of Appeals held that there was insufficient evidence for a reasonable juror to find all the elements of grand theft of retail goods outlined in Count 5 beyond a reasonable doubt. *State v. Coats*, 2018 WL 3966522, at \*3 (Idaho Ct. App. Aug. 20, 2018) The

Court of Appeals remanded the case with instructions to enter a judgment of acquittal for Count 5. *Id.* This Court granted the State's petition for review.

## II. STANDARD OF REVIEW

"While this Court gives serious consideration to the views of the Court of Appeals when considering a case on review from that court, this Court reviews the district court's decisions directly." *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006). "This Court will not overturn a judgment of conviction, entered upon a jury verdict, where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt." *State v. Smith*, 161 Idaho 782, 790, 391 P.3d 1252, 1260 (2017) (quoting *State v. Sheahan*, 139 Idaho 267, 285, 77 P.3d 956, 974 (2003)). "Evidence is substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *Id.* (quoting *State v. Eliasen*, 158 Idaho 542m 546, 348 P.3d 157, 161 (2015)).

## III. ANALYSIS

The State charged Coats with stealing retail goods or services from Walmart or Morgan pursuant to Idaho Code section 18-2403(1). Section 18-2403(1) provides: "A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds such property from the owner thereof." I.C. § 18-2403(1). An owner is "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder" of property. I.C. § 18-2402(6). Grand theft occurs when the value of the property taken exceeds one thousand dollars. I.C. § 18-2407(1)(b)(1). Property means anything of value, including money. I.C. § 18-2402(8).

Count 5 of the Information filed against Coats alleged:

That the Defendant, SHAWN TERRI COATS, on or about the 29th day of June, 2015, in the County of Ada, State of Idaho, did wrongfully obtain retail goods or other services with an aggregate value over $50, stolen three or more incidents of theft, which was stolen as part of a criminal episode over a period of up to three days from the owner, Theodore Morgan and/or Walmart, with the intent to appropriate to himself certain property of another.

The jury was instructed that to find Coats guilty of grand theft, the State had to prove the following elements beyond a reasonable doubt:

1. On or between June 29, 2015 and June 20, 2015;
2. in the state of Idaho;

4

3. the defendant; Shawn Jerri Coats, wrongfully obtained property described as: retail goods or services;
4. from an owner;
5. with the intent to deprive the owner of the property or to appropriate the property; and
6. the property was taken during three or more incidents; and
a. the aggregate value of the property is over $50.00; and
b. the property was stolen during a series of unlawful acts committed over a period of up to three days.

The parties do not dispute the underlying sufficiency of the evidence presented at trial that established Coats used Morgan's debit card to make unauthorized purchases at Walmart. What is in contention is whether Coats stole retail goods from an owner. Coats argues that he did not "wrongfully obtain" retail goods from Walmart because he paid for them in full (albeit with stolen money), and he did not steal retail goods from Morgan because Morgan never owned the retail goods purchased from Walmart. The State responds that when Coats purchased retail goods from Walmart with Morgan's money, Morgan had a superior claim to those goods, making him the owner of them. Thus, when Coats failed to relinquish the retail goods to Morgan, he effectively committed theft. We hold that Coats did not commit grand theft of retail goods or services from Walmart or Morgan.

So what did Coats do? Coats deposited fraudulent checks into Morgan's deficient bank account. The credit union thereby credited funds to Morgan on the assumption that the checks were legitimate. Coats then took Morgan's debit card, armed with the pin number, and made several purchases at Walmart. The record shows that Walmart was paid with funds from the debit card, and retail goods were sold to Coats in good faith. Coats stood face-to-face with a cashier in Walmart, inserted a debit card into a card reader, entered a pin number, completed the transaction, and was given retail goods. This whole ordeal was no different—in the grand theft sense—than if Coats had stolen cash from Morgan and purchased retail goods from Walmart using the legal tender.

Under section 18-2403 (1), a person has committed theft when he *wrongfully obtains* property from an *owner*. I.C. § 18-2403(1). Under the statute there is a link between wrongful conduct and an owner of property. In this case, it is clear from the record that Walmart was paid in full for the retail goods that Coats bought with Morgan's debit card. While Coats' use of the

5

debit card was certainly wrongful, it was not wrongful in relation to an owner, as set out in the Information and the jury instruction.

Before analyzing the ownership issue it is important to understand the sinister nuances of thievery and acquisition of title to stolen goods. It is an elementary and age-old principle that a thief *does not* acquire title to stolen property or stolen money. *Gissel v. State*, 111 Idaho 725, 731, 727 P.2d 1153, 1159 (1986). However, when a thief uses stolen money to make a purchase of goods, and the seller of the goods accepts the money in good faith, the *seller* acquires title to the money. *See* 38 A.L.R. 3d 1354 (1971) (emphasis added); *see also* 53A Am. Jur. 2d Money § 22. "In general, only bad faith on the part of a third person receiving stolen money, or the failure on the third person's part to give a valuable consideration for it, will defeat the third person's title to the money as against the true owner." 53A Am. Jur. 2d Money § 23. The common rationale for this pragmatic rule is the need for money to pass freely in commercial transactions, without the fear that legal tender may somehow be tainted with some unknown wrongdoing. *See City of Portland v. Berry*, 86 Or. App. 376, 380, 739 P.2d 1041, 1044 (1987). The off-putting aspect of this rule is that the thief acquires superior title to purchased goods, making him owner of the goods bought with stolen money.

While it may seem strange that a thief who makes purchases with stolen money acquires title to whatever property he purchases, and the good faith seller (i.e., Walmart) has title to the stolen funds, the original owner is not left without a remedy. In such a situation, a constructive trust arises in the property that was purchased with the true owner's money. *Snider v. Arnold*, 153 Idaho 641, 643, 289 P.3d 43, 46 (2012). "Imposition of a constructive trust is an equitable remedy and does not require that the holder of legal title intend to create a trust interest in another." *Id.* at 643–44, 289 P.3d at 45–46. The imposition of a constructive trust is not automatic; it must be proved by clear and convincing evidence. *Id.* at 644, 289 P.3d at 46 (referencing *Hettinga v. Sybrandy*, 126 Idaho 467, 469, 886 P.2d 772, 774 (1994)). "Until a court grants the victim . . . a constructive trust remedy . . . the victim merely has a right to seek such a remedy." *United States v. Brimberry*, 779 F.2d 1339, 1348 (8th Cir. 1985); *see also In re Newpower*, 233 F.3d 922, 930–31 (6th Cir. 2000); *U.S. S.E.C. v. Universal Exp., Inc.*, 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008). We are not holding that a constructive trust arose as a matter of law over the retail goods Coats purchased from Walmart. The remedy of a constructive

trust is only presented as an illustration of a possible remedy that may be sought when property is acquired from a good-faith seller using stolen funds.

In the present case, the complaint alleged that Coats wrongfully obtained retail goods or services from an owner, specified as being Morgan and/or Walmart. The jury instructions did not include the specification of who an owner was, but still required that the State prove beyond a reasonable doubt that Coats wrongfully obtained retail goods or services from an owner. As explained above, Coats did not wrongfully obtain retail goods or services from Walmart; Walmart was a good faith seller that provided retail goods or services to Coats after receiving funds through a debit card transaction. Therefore, the only other "owner" of retail goods or services that could have been meant in the jury instructions was Morgan.

However, Morgan did not have superior title to the retail goods Coats purchased with the debit card. Morgan did not authorize the purchases Coats made at Walmart, nor was the money his own. The money had been credited to his account by his credit union. The credit union did not possess superior title to the funds once transferred to Walmart in a good-faith transaction, and therefore the credit union could not be construed as an "owner" of the retail goods purchased by Coats. Even if the stolen funds were Morgan's, Morgan would have only possessed the right to seek a constructive trust on the goods that Coats had purchased from Walmart using his funds. Therefore, it is immaterial whether Morgan or the credit union had funds stolen from them, the jury instructions required the jury to determine whether the State proved *retail goods or services* were wrongfully obtained from an owner. This simply did not occur in this case.

A comparable situation was presented to the Alabama Supreme Court regarding land purchased with stolen money. *Costell v. First Nat. Bank of Mobile*, 274 Ala. 606 (1963). A "miserly old lady who distrusted banks" died, but had hidden gold coins throughout her house during her lifetime. *Id.* at 607. A legal secretary secreted some of the coins and purchased two parcels of land. *Id.* The estate of the deceased argued that a resulting trust in the parcels of land occurred, but the Supreme Court held that the lower court properly found a constructive trust resulted. *Id.* It explained that the legal secretary could *not* have acquired title to the stolen gold coins, but she *could* acquire title to the property purchased with the stolen gold coins. *Id.* at 609. "It is a general rule in most jurisdictions that if the funds of one person are wrongfully used by another in the purchase of real estate in his own name . . . a constructive trust in the property purchased . . . will arise in favor of the one whose money was wrongfully used." *Id.* As

7

explained above, a constructive trust is an equitable remedy that must be pursued—it does not endow the victim with a greater current possessory interest in the property than the thief.

However, the actual funds used in the electronic funds transfer belonged to the credit union. This is evidenced by Morgan's account being overdrawn after Coat's shopping spree, resulting in a large negative balance on the account. When Walmart was paid for the retail goods during the POS (point-of-sale) transaction, the credit union had previously "credited" Morgan's account. The funds did not actually exist in Morgan's account—the credit union required him to pay the full negative balance with a "workout loan." Thus, if the State desired to charge Coats for grand theft relating to the purchases made at Walmart with a debit card, it had to properly allege Coats wrongfully obtained money from the credit union that credited Morgan's account with funds for the POS transaction. Yet, the State charged Coats with wrongfully obtaining retail goods from an owner—there was not sufficient evidence presented for a jury to convict Coats of this specific crime.

In this case, Coats did not steal retail goods or services from Walmart because they were paid with legal tender, and he did not steal retail goods or services from Morgan because Morgan did not have a greater possessory interest in the retail goods or services. Thus, there is not substantial evidence supporting the jury's verdict finding Coats guilty beyond a reasonable doubt of wrongfully obtaining retail goods or services from an owner. The judgment of conviction for Count 5 - Grand Theft, is vacated and the case is remanded with instructions to the district court to dismiss the charge. Because the judgment of conviction on Count 5 is vacated and the charge will be dismissed, we need not address the double jeopardy issue. The conviction on Count VII stands.

## IV.    CONCLUSION

In light of the foregoing, the judgment of conviction for Count 5 is vacated, and the case is remanded with instructions to the district court to dismiss Count 5. The conviction on Count VII stands.


Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.