CAPITOL CITY LODGE NO 141, FRATERNAL ORDER OF POLICE
v MERIDIAN TOWNSHIP

Docket No. 78-2602. Submitted March 7, 1979, at Lansing.—Decided
June 5, 1979. Leave to appeal applied for.

The Charter Township of Meridian, pursuant to statutory author-
ity, obtains police protection from the Ingham County Sheriff.
The sheriff provides the deputies to serve the township and the
township compensates the deputies directly. The deputies serv-
ing the township, through their bargaining representative Capi-
tol City Lodge No. 141, Fraternal Order of Police, have a
collective bargaining agreement with the township. The sheriff
revoked the deputization of Sergeant Thomas Kintigh, one of
the Meridian Township officers, for failure to appear at an
investigatory interview unaccompanied by a union representa-
tive. Kintigh and the union filed an unfair labor practice
charge against the township. The Employment Relations Com-
mission determined that the township was bound by the acts of
the sheriff, that the sheriff had violated the public employment
relations act, and that, therefore, the township had violated the
act. The township appeals. *Held:*

The intention of the Legislature was that an "agent of a
public employer" was to mean an agent as defined in the
common law of agency. So defined, the county sheriff is not the
agent of a township which utilizes the sheriff to provide police
protection. Therefore, the actions of the sheriff are not to be
imputed to the township.

Reversed, and charges dismissed.

1. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — AGENT
— COMMON LAW — STATUTES.
An "agent of a public employer", as used in the public employ-
ment relations act, is an agent as defined by the common law of
agency (MCL 423.210[1]; MSA 17.455[10][1]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur 2d, Agency § 1.
[2] 3 Am Jur 2d, Agency § 359.
[3] 48A Am Jur 2d, Labor and Labor Relations § 1651.
[4] 41 Am Jur 2d, Independent Contractors §§ 5-7.

2. AGENCY — AGENCY RELATIONSHIP — QUESTION OF FACT.

The existence of an agency relationship is a question of fact to be determined by the trier of fact.

3. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT — STATUTES.

The findings of the Michigan Employment Relations Commission with respect to fact questions are conclusive when supported by substantial evidence on the record (MCL 423.23[e]; MSA 17.454[25][e]).

4. SHERIFFS AND CONSTABLES — TOWNSHIPS — AGENCY — RIGHT TO CONTROL — STATUTES.

A township which calls upon a county sheriff to provide special police protection pursuant to statutory authority is limited in its right of control over the sheriff to the financial aspects of the relationship; the sheriff does not become an agent of the township, but rather, the relationship is that of an independent contractor and the actions of the sheriff are not to be imputed to the township (MCL 41.181; MSA 5.45[1]).

*R. David Wilson,* for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *Theodore W. Swift, David Vander Haagen* and *Karen Bush Schneider),* for defendant.

Before: M. F. CAVANAGH, P.J., and BASHARA and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. This is an appeal by defendant Charter Township of Meridian from a decision of the Michigan Employment Relations Commission (MERC) in which MERC found that defendant had violated § 10 of the Michigan public employment relations act (PERA), MCL 423.210; MSA 17.455(10), by the actions of its agent, the sheriff of Ingham County, when he revoked the deputization of Sergeant Kintigh for the failure to appear at an investigatory interview unaccompanied by union representation. Defendant contends that the finding concerning the agency status of

the sheriff of Ingham County was erroneous as a matter of law, and that, therefore, the MERC decision and order based upon it should be reversed.

Section 10 of PERA provides for unfair labor practices and defines prohibited activities. Its provisions are applicable to "a public employer or an officer or agent of a public employer", MCL 423.210(1); MSA 17.455(10)(1), as well as "a labor organization or its agents", MCL 423.210(3); MSA 17.455(10)(3). PERA does not however contain a definition of the word "agent", nor have the courts of this state been called upon to determine its precise meaning. The most logical explanation to the lack of an authoritative definition of "agent" as used in PERA is that the Legislature intended its meaning to be derived from the law of agency as it has been developed at common law. However, another equally plausible explanation is that the Legislature intentionally adopted § 10 of PERA in the form that it did with expectation that the Michigan courts would rely upon the legal precedents developed under the National Labor Relations Act, 49 Stat 449; 29 USC 151 *et seq.,* to the extent that it applies to public sector labor relations. See *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974). See also, Edwards, *The Emerging Duty to Bargain in the Public Sector,* 71 Mich L Rev 885 (1973).

The National Labor Relations Act, 49 Stat 449; 29 USC 151 *et seq.* (1935), was the first step in establishing a nationwide private sector labor relations framework. Section 2(2) of NLRA defined the term "employer" to include "any person acting in the interest of an employer, directly or indirectly". This section was interpreted by the United States Supreme Court as follows:

"The purpose of § 2(2) seems obviously to render employers responsible in labor practices for acts of any persons performed in their interest. It is an adaptation of the ancient maxim of the common law, *respondeat superior,* by which a principal is made liable for the tortious acts of his agent and the master for the wrongful acts of his servants. Even without special statutory provision, the rule would apply to many relations. But Congress was creating a new class of wrongful acts to be known as unfair labor practices, and it could not be certain that the courts would apply the tort rule of *respondeat superior* to these derelictions. Even if it did, the problem of proof as applied to this kind of wrongs might easily be complicated by questions as to the scope of the actor's authority and of variance between his apparent and his real authority. Hence, it was provided that in administering this act the employer, for its purposes, should be not merely the individual or corporation which was the employing entity, but also others, whether employee or not, who are 'acting in the interest of an employer.' " *Packard Motor Car Co v National Labor Relations Board,* 330 US 485, 489; 67 S Ct 789; 91 L Ed 1040 (1947).

Thus, under the NLRA, the acts of other individuals, though not agents of the employer in the traditional common-law sense, would be imputed to the employer as long as those individuals were acting in the interest of the employer.

In June of 1947, the Congress, responding to court interpretation of the NLRA as well as other social pressures, enacted the Labor Management Relations Act, 61 Stat 136 (1947), commonly known as the Taft-Hartley Act, in order to amend the NLRA. In its amended version the term employer was defined as "any person acting as an agent of an employer, directly or indirectly". 61 Stat 137; 29 USC 152(2). In addition Taft-Hartley created a new section, 2(13), which stated:

"In determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 61 Stat 139; 29 USC 152(13).

In his analysis of the changes created by Taft-Hartley, Senator Taft said the following:

"Section 2(2), 2(13) and 301(e): The conference agreement in defining the term employer struck out the vague phrase in the Wagner act 'anyone acting in the interest of an employer' and inserted in lieu thereof and the word 'agent.' The term agent is defined in section 2(13) and section 301(e), since it is used throughout the unfair labor practice sections of title I and in sections 301 and 303 of title III. In defining the term the conference amendment reads 'the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.' *This restores the law of agency as it had been developed at common law."* 93 Congressional Record, 6858-6859 (June 12, 1947). (Emphasis supplied.)

It is clear from these amendments that the purpose of Congress in enacting the Taft-Hartley amendments was to restore the applicability of common-law agency principles of responsibility, and to preclude imputation of the acts of one person to another, except when one is acting as the agent for the other. *International Ladies' Garment Workers' Union, AFL v National Labor Relations Board,* 99 US App DC 64, 70; 237 F2d 545, 551 (1956). See also, *National Labor Relations Board v United Ins Co of America,* 390 US 254, 256; 88 S Ct 988; 19 L Ed 2d 1083 (1968), *National Labor Relations Board v Local No 64, Falls Cities District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL-*

*CIO,* 497 F2d 1335, 1336 (CA 6, 1974), *International Brotherhood of Electrical Workers, AFL-CIO v National Labor Relations Board,* 159 US App DC 242, 258; 487 F2d 1113, 1129 (1972), *National Labor Relations Board v International Longshoremen's and Warehousemen's Union, Local 10,* 283 F2d 558, 563 (CA 9, 1960), *United Mine Workers of America v Patton,* 211 F2d 742, 747 (CA 4, 1954). This utilization of the common-law principles of agency on the Federal level convinces us that the Michigan Legislature, when it enacted PERA, intended the phrase "agent of a public employer" in § 10 to mean an agent as defined by the common law of agency.

In its decision, MERC interpreted the Taft-Hartley amendments as creating an expansive definition of agency, when it is clear these amendments intended a return to the common-law definition of agency. Based on this misinterpretation of the Taft-Hartley amendments, MERC held that the finding of the agency relationship did not depend upon rigid or technical applications of the principles of *respondeat superior.* It then determined that, by entering into a collective bargaining agreement with the union and by relying upon the Ingham County Sheriff to manage the daily operations of those employees represented by the union, Meridian Township became bound by the acts of the sheriff which affected this employment relationship.

The existence of an agency relationship is a question of fact to be determined by the trier of fact. *Lincoln v Fairfield-Nobel Co,* 76 Mich App 514; 257 NW2d 148 (1977), *Birou v Thompson-Brown Co,* 67 Mich App 502; 241 NW2d 265 (1976). MERC's determination that Meridian Township is to be bound by the acts of the sheriff is in effect a

determination that the sheriff of Ingham County was an agent of Meridian Township, even though not stated in those precise words. The findings of MERC with respect to fact questions are conclusive when supported by substantial evidence on the record. MCL 423.23(e); MSA 17.454(25)(e), *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974). Accordingly we must examine the relationship of the parties to determine whether there is substantial evidence to sustain a determination that the Ingham County Sheriff was an agent of Meridian Township in this instance.

The office of county sheriff is constitutionally created, Const 1963, art 7, § 4, and the duties and authority of the sheriff are established by statute. MCL 51.68 *et seq.;* MSA 5.861 *et seq.* The sheriff and the County Board of Commissioners are joint employers of deputy sheriffs, with the sheriff controlling their appointment and tenure in position, MCL 51.70; MSA 5.863, while the county commissioners establish the number of deputies to be employed as well as the compensation levels. MCL 51.242; MSA 5.892. See *Local 1518, Council 55, American Federation of State, County & Municipal Employees, AFL-CIO v St Clair County Sheriff,* 77 Mich App 145, 149-150; 258 NW2d 168 (1977), *lv gtd* 402 Mich 881 (1978). See also, *Wayne County Library Board v Wayne County Board of Comm'rs,* 78 Mich App 240, 245, fn 3; 259 NW2d 440 (1977).

The Charter Township of Meridian is a Michigan municipal corporation organized and existing pursuant to MCL 42.1 *et seq.;* MSA 5.46(1) *et seq.* Townships are specifically authorized to adopt and enforce ordinances, and for that purpose may "employ and establish a police department with full

power to enforce local township ordinances * * * or may by resolution appropriate funds and call upon the sheriff of the county in which the township is located to provide special police protection for the township". MCL 41.181; MSA 5.45(1). Since 1950 Meridian Township has called upon the Ingham County Sheriff to provide this protection as permitted by statute. When the county sheriff is so called upon to provide special police protection for a township, it is his duty to do so to the extent that township funds are appropriated. However, even though the township requesting such protection is obligated to pay the entire financial cost of this protection, the "[s]pecial township deputies appointed by the sheriff shall be under the jurisdiction of and solely responsible to the sheriff". MCL 41.181; MSA 5.45(1).

Meridian Township, having called upon the Ingham County Sheriff to provide special police protection for the township, is obligated to pay the county for the services so rendered. The township, rather than making direct payments to the county, has entered into a collective bargaining agreement with Capitol City Lodge #141, representing the deputies assigned to Meridian Township, and satisfies its financial obligation to the county by direct payments to the officers concerned. The sheriff of Ingham County as well as the Ingham County commissioners, though the actual employers of the deputies assigned to Meridian Township, were excluded from the negotiation of this collective bargaining agreement and are not signatories to it. However, since neither are parties in this action, and since the county has accepted the benefit of this contract by permitting Meridian Township to assume their obligation to pay deputies appointed by the sheriff, we will not address the propriety of

entering into a collective bargaining agreement such as this.

Having placed the relationship of the parties in its true perspective, we must now ascertain whether the sheriff is an agent of Meridian Township, utilizing common-law principles of agency. The right to control an agent is fundamental to the existence of an agency relationship. *National Labor Relations Board v Local No 64, Falls Cities District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL-CIO,* 497 F2d 1335, 1336 (CA 6, 1974). See generally, 2A CJS, Agency, § 6, and treatises and texts on agency. The sheriff is an elected official and acts in his own right. He is responsible for the law enforcement in Ingham County and was conducting a criminal investigation when the instant controversy arose. To hold as MERC did, that the sheriff is an agent of Meridian Township, requires a finding that Meridian Township has a right to control an elected official in the performance of his statutory duties, which finding would have no basis in law or fact. Additionally, it is clear from the record that Meridian Township did not have the actual ability to control the actions of the sheriff. They specifically requested that the sheriff not take the action he did, but were unable to prevent him from so acting.

When a township calls upon the county sheriff to provide special police protection pursuant to MCL 41.181; MSA 5.45(1) its right of control over the sheriff is limited to the financial aspects of this relationship. The deputies utilized to provide police protection are solely responsible to the sheriff, thus prohibiting the sheriff from becoming an agent of the township since the township has no right to control the sheriff's direction of these

deputies. Accordingly, we find that when a township calls upon the county sheriff to provide special police protection for the township pursuant to MCL 41.181; MSA 5.45(1) the sheriff's relationship to the township is that of an independent contractor and the actions of the sheriff are not to be imputed to the township. MERC's contrary determination that the sheriff was an agent of Meridian Township is not supported by substantial evidence. Accordingly, MERC's decision and order is reversed and the charges are dismissed in their entirety. No costs, a public question being involved.