ST CLAIR INTERMEDIATE SCHOOL DISTRICT v INTERMEDIATE
EDUCATION ASSOCIATION/MICHIGAN EDUCATION ASSOCIATION

Docket Nos. 161643, 161645. Submitted May 23, 1996, at Lansing. Decided
September 17, 1996, at 9:10 A.M.

The St. Clair Intermediate School District filed with the Michigan
Employment Relations Commission an unfair labor practice charge
against the Intermediate Education Association/Michigan Educa-
tion Association (IEA/MEA) and the Michigan Education Special Ser-
vices Association (MESSA), alleging that the respondents, in chang-
ing the lifetime maximum health insurance benefit limit under a
MESSA plan covering the district's unionized employees without noti-
fying and bargaining with the district, engaged in conduct made
unlawful by § 10(3)(c) of the public employment relations act
(PERA), MCL 423.210(3)(c); MSA 17.455(10)(3)(c). The commission
decided in favor of the district. The respondents filed separate
appeals, which were consolidated.

The Court of Appeals *held*:

1. Competent, material, and substantial evidence exists in the
record to support the commission's finding that the MESSA acted as
the MEA's agent in modifying the terms of the health insurance
policy.

2. Health insurance benefits are a mandatory subject of collec-
tive bargaining under the PERA. The respondents, in unilaterally
changing the original, bargained-for lifetime maximum limit,
effected a change in working conditions without bargaining with
the district and therefore violated the PERA.

3. The commission did not err in finding that the district had not
waived its right to bargain with regard to the change in health
insurance coverage. There is not sufficient evidence of a clear,
explicit, and unmistakable waiver.

Affirmed.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — MANDATORY SUB-
JECTS OF COLLECTIVE BARGAINING — LIFETIME LIMITS ON HEALTH INSUR-
ANCE BENEFITS.

The maximum lifetime limit of health insurance benefits for unionized
public employees is a mandatory subject of collective bargaining
under the public employment relations act; a union or its agent that

unilaterally changes such a limit set in a collective bargaining agreement where there is no clear, explicit, and unmistakable waiver by a public employer of its rights to bargain violates the act and thereby commits an unfair labor practice (MCL 423.210[3][c]; MSA 17.455[10][3][c]).

*Thrun, Maatsch and Nordberg, P.C.* (by *Donald J. Bonato*), for St. Clair Intermediate School District.

*White, Beekman, Przybylowicz, Schneider & Baird* (by *Arthur R. Przybylowicz*), for Intermediate Education Association/Michigan Education Association.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Iris K. Socolofsky-Linder*), for Michigan Education Special Services Association.

Before: MARKEY, P.J., and MCDONALD and M. J. TAL-BOT,* JJ.

PER CURIAM. Respondents Intermediate Education Association/Michigan Education Association (IEA/MEA), and Michigan Education Special Services Association (MESSA) appeal from the Michigan Employment Relations Commission (MERC) decision finding them in violation of the bargaining obligation of § 10(3)(c) of the public employment relations act (PERA), MCL 423.201(3)(c); MSA 17.455(10)(3)(c).

The St. Clair Intermediate School District (charging party) filed a charge with the MERC, alleging that respondents violated the bargaining obligation of the PERA when each took part in unilaterally changing the terms of the charging party's MESSA health-care coverage found in the parties' collective bargaining agreement. Without first negotiating with the charging party, respondents increased the initial $1,000,000

---

* Circuit judge, sitting on the Court of Appeals by assignment.

lifetime maximum health insurance benefit to a $2,000,000 coverage cap.

In finding respondents liable, the MERC determined that respondents implemented an improper unilateral change in the charging party's collective bargaining agreement, that the charging party did not waive its right to bargain with respect to the change, and that the MESSA acted as an agent of the MEA when it implemented the change. Respondents were ordered to cease and desist in making unilateral changes affecting the employees of the charging party and to reinstate the $1,000,000 lifetime benefit cap initially afforded to the charging party. We affirm.

I

Respondents first argue that the MERC erred in finding that the MESSA acted as an agent of the MEA when it modified the terms of its health insurance policy because there is nothing in the record to suggest that the MEA authorized or consented to the MESSA acting on its behalf, that the MESSA acted for the benefit of the MEA, or that the MEA exercised "actual control" over MESSA decision making. We disagree.

Our review of administrative agency decisions is limited by the statutory mandate that factual findings be deemed conclusive if supported by competent, material, and substantial evidence on the record considered as a whole and that due deference be given to administrative expertise. MCL 423.216(e); MSA 17.455(16) (e). Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence. *In re Payne*, 444 Mich 679; 514 NW2d 121 (1994). Likewise, legal

rulings of administrative agencies are set aside if they are found to be in violation of the constitution or a statute or affected by a "substantial and material error of law." MCL 24.306(1)(a), (f); MSA 3.560(206) (1)(a), (f).

In *Lodge No 141, FOP v Meridian Twp*, 90 Mich App 533; 282 NW2d 383 (1979), this Court determined that when applying the PERA to a labor organization or its "agent," the Legislature intended to employ the law of agency as it had been developed at common law, stating that it is the "right to control," or the "actual ability to control," that is fundamental to the existence of an agency relationship. Having reviewed the record, we conclude that there was substantial evidence presented to support the MERC's finding that the MESSA acted as an agent of the MEA, as defined by common law.

The MESSA is a nonprofit subsidiary corporation created by the MEA to act as an agent in administering insurance plans for the MEA and its members and to provide health-care benefits to employees in bargaining units represented by local labor organizations affiliated with the MEA and to other school district employees. According to the MESSA's corporate bylaws, the MESSA's board of trustees acts pursuant to a majority vote and is composed of thirteen persons, including the MEA president and vice president, and an additional six who are elected "from and by" the MEA board. In addition, the MEA executive director also serves as the executive secretary (or chief executive officer) of the MESSA, oversees the internal operations of the MESSA, and implements the policies adopted by the MESSA board.

Aside from the physical interlocking of the two entities, the record also provides ample evidence to support the conclusion that it was the intent of the MESSA to act as a fiduciary for the MEA. Evidentiary documents contained statements that it was the MESSA's mission and goal to "serve members of the MEA" and to "meet the needs of the MEA," that the MESSA and the MEA members are in "partnership together," that the MESSA is "designed to service MEA members," that the "MESSA is a part of the MEA," and that the MESSA is a "membership organization governed by MEA members." Several documents also establish an explicit dual involvement between the MESSA and the MEA in negotiating insurance benefits. Accordingly, we find that the record provides competent, material, and substantial evidence of the MEA's ability to control the MESSA and of both corporations' intent to establish a fiduciary relationship. *Meridian Twp, supra* at 541.

II

Respondents next argue that the MERC erred in finding the change in MESSA benefits to be an improper unilateral "mid-term modification" of the collective bargaining agreement between respondents and the charging party, or a "change in working conditions," because the charging party never initially bargained for specific benefit levels. Furthermore, the modification did not change the fact that the charging party still possessed the insurance plan as bargained for. We disagree.

The PERA prohibits a "labor organization or its agent" from refusing to bargain collectively with a public employer over subjects that are classified as

"mandatory subjects of collective bargaining." MCL 423.201(3)(c); MSA 17.455(10)(3)(c); *MEA-NEA v St Charles Community Schools*, 150 Mich App 763, 768; 389 NW2d 482 (1986). In determining what qualifies as "mandatory subjects of collective bargaining," this Court has included health insurance benefits among such subjects (*St Charles Schools, supra* at 768-769), and in *Houghton Lake Ed Ass'n v Houghton Lake Bd of Ed*, 109 Mich App 1, 6; 310 NW2d 888 (1981), specifically found that a MESSA insurance plan, similar to the one involved in the present case, had a profound effect upon the conditions of employment.

Here, respondents neglected to provide the charging party with notice and an opportunity to bargain before making changes in the existing terms or conditions of employment; therefore, the unilateral increase of benefits was improper. Furthermore, because each MESSA insurance plan is implemented in a uniform fashion from school to school, individual bargaining with regard to specific details contained within the policy is unnecessary and uncommon. Therefore, we conclude that in bargaining for the MESSA's Super Care 2 policy, the charging party essentially bargained for its contents and was wrongly denied its opportunity to again negotiate with respondents before respondents' unilateral change of that policy. *St Charles Schools, supra* at 768.

III

Last, respondents argue that because the charging party had failed to demand negotiations, had acquiesced to changes implemented by the MESSA in the past, and had agreed to be bound by a certificate in which the MESSA specifically reserved the right to

make unilateral modifications, the MERC erred in finding that the charging party had not waived its right to bargain. We disagree.

In *Kent Co Ed Ass'n v Cedar Springs Public Schools*, 157 Mich App 59; 403 NW2d 494 (1987), this Court held that before one can be said to have waived the right to bargain over changes made, there must first be "sufficient evidence of a clear, explicit and unmistakable waiver of the right to bargain." We found no such waiver in the present case.

First, because the MESSA deemed itself able to make unilateral changes without prior negotiation, because the MESSA board had already voted on and passed the modification by the time the charging party was notified, and because the MESSA was unwilling to modify individual policies according to each school district's preference, a demand to bargain or negotiate by the charging party would have been futile, and thus unnecessary. *Local 10, MEA/NEA, Lake Fenton Unit v Lake Fenton Community Schools*, 1988 MERC Lab Op 178; 1 MPER ¶ 19054, p 152.

Second, regarding the charging party's failure to object to prior changes, the record reveals that the charging party's prior acquiescence was a practice or pattern that existed only because of error or lack of knowledge. We find that such evidence does not support a "clear, explicit, and unmistakable waiver" of the charging party's right to bargain. *Cedar Springs Public Schools, supra* at 66.

Third, we find that the charging party did not explicitly agree to be bound by a provision wherein the MESSA reserved the right to make unilateral changes. The charging party agreed only to be bound by the terms of any "certificates issued to MESSA."

Here, the MESSA's reservation of the right to modify its policies is contained in a handbook formulated by the MESSA itself, rather than being a document "issued to MESSA" from the insurance underwriter. Once again, we conclude that the record is devoid of any evidence that the charging party unmistakably waived its right to bargain and find that the MERC did not err in finding that no such waiver existed. *Id.*

Affirmed. Costs to appellee.