RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0408P (6th Cir.)
File Name: 00a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: GEORGE D. NEWPOWER, JR.,

                _Debtor._

_____

ROBERT KITCHEN; HARRIET KITCHEN; NEW PROPERTIES, INC.,

                _Movants-Appellees/_
                _Cross-Appellants,_

            _v._

JAMES W. BOYD, Chapter 7 Trustee,

                _Respondent-Appellant/_
                _Cross-Appellee._

Nos. 99-1211/1239

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00418—Douglas W. Hillman, District Judge.

Argued: June 13, 2000

Decided and Filed: December 7, 2000

1

Before: KENNEDY, BOGGS, and BATCHELDER, Circuit Judges.

————————————

## COUNSEL

**ARGUED:**    Ronald A. Schuknecht, LEWIS & SCHUKNECHT, Traverse City, Michigan, for Appellant. Jonathan R. Moothart, BOWERMAN, BOWDEN & MOOTHART, Traverse City, Michigan, for Appellees. **ON BRIEF:**    Ronald A. Schuknecht, LEWIS & SCHUKNECHT, Traverse City, Michigan, for Appellant. Jonathan R. Moothart, BOWERMAN, BOWDEN & MOOTHART, Traverse City, Michigan, for Appellees.

KENNEDY, J., delivered the opinion of the court, in which BOGGS and BATCHELDER, JJ., concurred except as to part III-B. BATCHELDER, J. (pp. 19-23), delivered a separate opinion, in which BOGGS, J., concurred, which constitutes the opinion of the court with respect to the issue addressed in part III-B.

————————————

## OPINION

————————————

KENNEDY, Circuit Judge.  Robert Kitchen ("Kitchen") and New Properties, Inc., ("NPI") (collectively referred to as "movants") moved the bankruptcy court to lift the 11 U.S.C. § 362 automatic stay in bankruptcy with respect to money that debtor George D. Newpower, Jr., ("Newpower" or "debtor") embezzled.  Movants argued that the embezzled funds were not property of Newpower's bankruptcy estate because: as a thief Newpower did not take title to the funds he embezzled; Newpower was acting as an agent and thus never had title to money loaned to NPI; money was held by Newpower pursuant to an express trust.  The bankruptcy court held that the $171,516.48 that Newpower transferred directly to third parties from NPI was not property of Newpower's estate, but

each of those unsecured creditors would rush to the bankruptcy court to argue that debtor's dealings with it were more egregious than his dealings with the others and the debtor's bad conduct justified special treatment, *i.e.*, the imposition of a constructive trust by the bankruptcy court.  *In re Omegas* spoke definitively to quash such postpetition scrambling by creditors pushing to a place at the head of the line.

We recognize that *In re Omegas* speaks negatively of the role of constructive trusts in bankruptcy proceedings in general.  However, the case before us today raises two distinct issues, neither of which was before the *Omegas* court: first, whether the automatic stay may be lifted to permit the victim of the debtor's theft to pursue a state court action, initiated pre-petition, to trace the stolen funds and obtain a judgment of constructive trust; and second, whether, in such a circumstance, the bankruptcy court may give effect to a state court judgment imposing a constructive trust.  We express no opinion on whether, in the event the Kitchens were successful in obtaining such a judgment, it would have an effective date prior to the filing of the bankruptcy petition—a matter that is governed by state law.  We simply hold that the Kitchens are entitled to a lifting of the stay in order that they may pursue their state court action, and that, in the event they are able to prevail in that action, *In re Omegas* does not bar the enforcement of such a judgment by the bankruptcy court. Therefore, as to this specific property, we reverse the bankruptcy court decision and order the stay to be lifted to allow the Kitchens to continue their state court action and seek whatever remedy is available to them, including the remedy of a constructive trust.

Because the bankruptcy code is clear that property is includable only to the extent of the debtor's legal title and not to the extent of any equitable interest that the debtor does not have, *see* 11 U.S.C. § 541(d), this question must be answered in order to determine to what extent the goods purchased with stolen money are includable in the debtor's bankruptcy estate. *In re Omegas* precludes the bankruptcy court from imposing a constructive trust on the property postpetition, but ownership of the equitable title in the property must nonetheless be assigned.[2] To hold as Judge Kennedy would, that the lifting of the stay serves no purpose because *In re Omegas* precludes the enforcement of a constructive trust impressed by the state court under the circumstances of this case, and that here bare legal title is sufficient to bring this properly entirely within the bankruptcy estate is to permit a result clearly prohibited by the Bankruptcy Code. *See* 11 U.S.C. § 541(d). Furthermore, to preclude the Kitchens from continuing their state court action to determine their equitable interest in the property would allow a thief, such as Newpower, unilaterally to convert stolen funds, in which the debtor has no title, into property of the bankruptcy estate simply by purchasing goods from an unknowing seller.

We disagree with Judge Kennedy's contention that *In re Omegas* bars the bankruptcy court's enforcement of any constructive trust that the state court might enter on behalf of the Kitchens. *In re Omegas* did not present a situation in which the debtor was a thief, and it did not purport to answer the question of the enforcement of a state court judgment under the circumstances presented by this case. *In re Omegas* presented the more common situation in which all the creditors have come to the bankruptcy court after having transferred property to the debtor in the ordinary course of business only to discover that the debtor was unable to pay them back, and was aware of its inability to pay even while engaging in the business transactions. Before *In re Omegas*,

---

[2]In our view, the state court where the Kitchens initiated their action before the bankruptcy petition was filed is best suited to determine who holds the equitable interest in the property at issue under Michigan law.

declined to lift the stay on the remaining $582,463. The Kitchens and NPI appealed the bankruptcy court's ruling to the district court, which held that none of the embezzled funds were property of Newpower's bankruptcy estate, and thus, were not subject to the automatic stay in bankruptcy. For the reasons that follow, we shall affirm in part and reverse in part.

## I.

The facts of this case were extensively detailed by the district court in *In re Newpower*, 229 B.R. 691 (W.D. Mich. 1999). However, for the purpose of analysis, we include a summary of those facts critical to the decision.

In January of 1996, Kitchen and Newpower, a licensed Michigan real estate broker, entered an agreement to form NPI. The corporation's purpose was to purchase and develop real estate in northern Michigan. Kitchen and Newpower were the sole shareholders and directors of the corporation. Kitchen was named vice president and secretary and Newpower was named president and treasurer.

Kitchen and Newpower agreed that Newpower would identify properties in Michigan for purchase and development by the corporation. If both shareholders agreed to purchase the property, NPI would do so, with a loan in the amount of 50% of the purchase price to the corporation by each shareholder. At the time the agreement was entered into, Kitchen lived in Alaska and Newpower lived in Michigan.

The first property that the shareholders agreed to purchase was an eighty-acre parcel in Kalkaska County, Michigan. The price of the property was $400,000, and as agreed, Kitchen and his wife (the "Kitchens") sent a check to Newpower for $200,000. The memo portion of the check stated that the check was for NPI, and contained a portion of the legal description of the property to be purchased. Instead of using the money to purchase the agreed upon property, Newpower deposited the check in his personal account and used the $200,000 for his own purposes.

Thereafter, for the remainder of 1996, Kitchen and Newpower conducted regular telephone discussions regarding the Kalkaska property, as well as four other parcels. Prior to each closing, Newpower would tell Kitchen how much money was needed to purchase the specified property. The Kitchens would then wire funds totaling one-half of the purchase price of the property to the corporate account, on which Newpower was the sole authorized signatory. Newpower continued his practice of misappropriating the funds for his own use with respect to these transfers as well. At the same time Newpower reported to Kitchen that everything was progressing as planned and even went so far as to travel to Alaska to meet with Kitchen and deliver fraudulent copies of deeds for the agreed upon properties.

When the Kitchens traveled to Michigan in December 1996 to check on the status of the properties, they quickly discovered that no properties had actually been purchased by Newpower. By investigating Newpower's financial records, the Kitchens were able to determine what Newpower had done with their money. Among other things, Newpower: bought a Corvette, a four-wheel drive pickup truck, and a power boat; built a new house for his girlfriend; loaned $60,000 to a former fiance; invested $50,000 in the production of a music CD for another girlfriend; spent tens of thousands of dollars in "loan repayments" to customer trust accounts for Newpower's real estate business; and made thousands of dollars of cash distributions to himself for "walking around money."

The Kitchens also filed a complaint with the Michigan Attorney General's office and a Michigan State Police investigation was commenced. Newpower initially fled, but eventually turned himself in and pled guilty to embezzlement. He was sentenced to six-to-ten years in prison and ordered to pay $755,000 in restitution to the Kitchens. Shortly thereafter, Newpower filed for bankruptcy and the Kitchens' lawsuit against the transferees of the embezzled funds was automatically stayed by the bankruptcy court on November 7, 1997, pursuant to the automatic stay provisions of 11 U.S.C.

reason that the state court has not yet issued a decision is the stay imposed by the bankruptcy court. Under these circumstances, nothing in *In re Omegas* prevents the lifting of the automatic stay so that the state court action may go forward.

Judge Kennedy argues in section III-B that there is no purpose in lifting the stay because even if the Kitchens were able to obtain a state court judgment impressing the property with a constructive trust, under *In re Omegas* "there is no action that the state court could take which would affect disposition [of these proceeds]." This statement, however, fails to recognize the crucial distinction between this case and *In re Omegas* and the cases cited therein. *In re Omegas* dealt with a situation wherein the debtor obtained property from a creditor in the ordinary course of business. There was no question that the debtor had legal title; the creditor intended such title to pass to the debtor. The debtor also had a colorable claim as to the equitable title in the property at issue. The question in *In re Omegas*, and the other cases cited therein, was whether some fraudulent or other bad act of the debtor in the course of those business dealings justified the bankruptcy court in stripping the debtor of the equitable title in the property. We held that it was not the province of the bankruptcy court to impose a constructive trust, but we were not faced with the question of either obtaining or enforcing a state court judgment holding that the equitable interest belonged to someone other than the debtor. *See In re Omegas*, 16 F.3d at 1450.

The situation presented by this case is significantly different. Here, Newpower is a thief. The critical issue therefore is not only who has legal title to the property, but also who has equitable title to the property purchased with the stolen funds. We held in part III-A that as a thief, Newpower had no title in the money he stole from the Kitchens, and while Newpower obtained bare legal title in the goods he purchased with the stolen funds, he clearly did not obtain equitable title in the goods. The question therefore remains, in whom does the equitable interest in these goods lie?

The automatic stay imposed by the filing of a bankruptcy petition shall be lifted upon motion by a party in interest in cases where (1) the party can show cause, including the lack of adequate protection of an interest in property of such party in interest, or (2) where the debtor does not have an equity interest in the property and the property is not necessary to an effective reorganization. *See* 11 U.S.C. §362(d). The Kitchens qualify under the second condition set forth in §362(d). As we have already held, the debtor did not obtain equitable title to these proceeds, and this case does not involve a reorganization because the debtor is liquidating his assets under Chapter 7. *See also In re Leitner*, 236 B.R. 420, 425 (D.Kan. 1999) (holding it entirely proper to lift the automatic stay to allow victim of embezzlement to proceed with state court action initiated before the filing of the bankruptcy petition).[1]

The trustee in this case argues that under *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994), the bankruptcy court may not impose a constructive trust, and, therefore, the Kitchens cannot recover their property ahead of the other creditors. However, *In re Omegas* simply held that because a constructive trust is a remedy that does not come into existence until it is judicially declared, a creditor claiming that a constructive trust should be impressed on particular property does not have an equitable interest in that property and 11 U.S.C. §541(d) does not permit the bankruptcy court to exclude those assets from the estate by impressing them with a constructive trust postpetition. This is not the situation presented by the Kitchens' appeal. In this case, the Kitchens initiated a state court action to recover the stolen property before the debtor filed his bankruptcy petition, and the sole

---

[1] *In re Leitner* ultimately concludes that a state court constructive trust, under Kansas law, would relate back to the date of the wrongdoing, thus removing the property from the debtor's estate altogether. *See* 236 B.R. at 425. However, the appeal before us does not present the question of the effect of a state court judgment impressing a constructive trust upon certain property in the debtor's possession because the Kitchens have not yet obtained such a judgment.

§ 362. The Kitchens and NPI moved to lift the stay or order an abandonment so that they could proceed with their state court action.

Following a hearing on movants' motion to lift the automatic stay, the bankruptcy court granted movants' motion in part and denied it in part. The bankruptcy court concluded that the funds which were transferred by Newpower directly from the NPI account to a third party, without passing through Newpower's personal account, were not property of the estate. Accordingly, the court concluded that the Kitchens were entitled to proceed on their actions to recover such funds from the recipients. However, as to money that passed through Newpower's hands in any way or that was used to purchase assets titled in Newpower's name, the court concluded that it was property of the estate. Thus, the bankruptcy court lifted the stay on $171,516.48 of assets that Newpower transferred directly to third parties from NPI but declined to lift the stay on the remaining $582,463 of assets traceable to the money that the Kitchens loaned NPI.[1]

Kitchen and NPI appealed the bankruptcy court's ruling to the district court. The district court held that the bankruptcy court erred in concluding that property traceable to the Kitchens' embezzled funds were property of Newpower's estate. Consequently, the district court reversed the bankruptcy court's decision to the extent that it declined to lift the automatic stay under 11 U.S.C. § 362 with respect to the remaining $582,463 of property traceable to movants' funds.

---

[1] The Kitchens have yet to recover a total of $754,999.64 that they loaned to NPI. The bankruptcy court only addressed whether the automatic stay was appropriate for $753,979.48, however, appellees do not dispute the difference, as they conceded during oral argument that it represented the only valid transactions that debtor made on behalf of NPI.

## II.

In considering an appeal from a decision of the district court, which reviewed a decision of the bankruptcy court, this court independently reviews the bankruptcy court's decision. *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986, 988 (6th Cir. 2000). In doing so, we will review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Century Boat Co.*, 986 F.2d 154, 156 (6th Cir.1993). Because the only question presented— whether the embezzled funds at issue and proceeds thereof are part of debtor's bankruptcy estate pursuant to 11 U.S.C. § 541—is a legal one, we review the bankruptcy court's decision de novo.

## III.

### A.

This appeal raises the question of whether the money misappropriated by debtor, money and property traceable to the misappropriated funds, and claims or causes of action to recover money and property traceable to the misappropriated funds are property of debtor's bankruptcy estate. If the $582,463 of assets traceable to the money the Kitchens lent NPI is estate property, then pursuant to 11 U.S.C § 541, the trustee must collect and distribute the money in proportional shares to all creditors of the bankruptcy estate.

Section 541 provides: "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). What qualifies as a property interest is determined by reference to state law, unless some federal interest requires a different result. *Butner v. United States*, 440 U.S. 48, 54–55 (1979).

The district court concluded that none of the funds and property at issue were part of debtor's bankruptcy estate

---
### CONCURRENCE
---

ALICE M. BATCHELDER, Circuit Judge, writing for the court as to part III-B and concurring in the remainder of the majority opinion. We held in part III-A that, as to the assets purchased with the stolen funds, the debtor obtained only bare legal title, that those assets are includable in the bankruptcy estate, and that the assets are thus subject to an automatic stay in bankruptcy under 11 U.S.C. §362. We agree with this holding as far as it goes, but it doesn't go far enough. Although property in which a debtor holds only bare legal title may, in some cases, be protected by the automatic stay, in this case the appellees' equitable interest in the property Newpower bought with embezzled funds precludes such protection.

The bankruptcy estate comprises all legal or equitable interests of the debtor, unless specifically excepted by the Code, as of the commencement of the bankruptcy case. *See* 11 U.S.C. §541(a). However, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate . . . *only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold*." 11 U.S.C. §541(d) (emphasis added). And, the determination of ownership of the equitable interest in the goods purchased by the debtor with the embezzled funds is a question of state law. *See Butner v. United States*, 440 U.S. 48, 54-55 (1979). The Kitchens and New Properties Inc. (collectively "the Kitchens") moved the bankruptcy court for an order lifting the automatic stay so they could proceed with their action in state court – filed prior to Newpower's petition in bankruptcy – claiming, *inter alia*, Newpower's conversion of their funds and seeking the recovery of those funds from Newpower and/or third parties and the imposition of a constructive trust on the property Newpower purchased with the stolen funds.

have authority to do with the funds as he wished, as all evidence indicated that the Kitchens sent the money to him for the sole and express purpose of depositing it with the Corporation once it formally came into being. Under the circumstances, we agree with the district court's conclusion that an agency relationship existed with respect to the $200,000 that the Kitchens initially sent the debtor. Consequently, the bankruptcy court erred in concluding that these funds were part of debtor's bankruptcy estate. However, as discussed above, debtor *would* have legal title to any proceeds obtained with these embezzled funds, rendering such proceeds part of debtor's bankruptcy estate.

## D.

It is unnecessary to address appellee's contention that debtor was an agent of NPI or that debtor held funds in an express trust for both NPI and the Kitchens with respect to items to which he had legal title, since legal title places those items in the debtor's estate.

## IV.

In sum, we AFFIRM the district court's conclusion that none of the money misappropriated by debtor was property of the debtor's bankruptcy estate although some of the proceeds are. We REVERSE the district court to the extent it concluded that debtor's bankruptcy estate did not have legal title to the property that debtor bought with such funds, and that he still possessed at the time he filed his bankruptcy petition. Further, we AFFIRM the district court's decision to lift the 11 U.S.C. § 362 automatic stay with respect to the $753,979.48 at issue, as well as funds or property traceable to this money. The Kitchens are free to seek to recover such funds or proceeds thereof, wherever they may be found, to the extent that the law allows. We REMAND this case to the bankruptcy court with directions to lift the automatic stay and for further proceedings consistent with this opinion.

because, as a thief, debtor took no title to the funds, an express trust existed under the circumstances, and debtor held the embezzled funds as an agent. Based on its conclusions, the district court reversed the bankruptcy court's order and remanded for entry of an order granting relief from stay as to the $582,463 and causes of action to recover that sum.

Unless a countervailing federal interest exists, state law determines whether a debtor has a property interest for purposes of § 541(a)(1). *Butner v. United States,* 440 U.S. 48 (1979); *In re Van Dresser Corp.*, 128 F.3d 945 (6th Cir. 1997). Such property may take the form of legal or equitable interest in property held by the debtor as of the commencement of the case. *In re Van Dresser Corp.,* 128 F.3d at 947. If debtor's estate had a property interest in the funds at issue, then as a fundamental principle of bankruptcy law, the funds should be ratably distributed to the creditors of the bankrupt estate. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1445 (6th Cir. 1994).

Movants argued that debtor stole the funds embezzled from NPI and further assert that because a thief takes no title under Michigan law, embezzled funds or proceeds thereof are not property of debtor's bankruptcy estate. While the bankruptcy court recognized that state law would determine the extent of debtor's property interest in the money he embezzled, it did not specifically review Michigan law, merely concluding that "this was not a true theft." On appeal, movants rely on *Morgan v. Hodges*, 50 N.W. 876 (Mich. 1891), in support of their position that under Michigan law, debtor's bankruptcy estate did not have a property interest in the funds he embezzled.

In *Morgan*, the plaintiff leased horses, a harness, buggy, robes, and a whip to Seaman. Seaman rented the horses and gear for the purpose of driving to Frankfort, Michigan. Instead, however, Seaman drove to Grand Rapids and sold the horses and gear to defendants, who knew Seaman and had no reason to doubt his representations of ownership. By the time plaintiff finally traced his property to defendants' possession,

defendants had sold the horses but still retained the rest of plaintiff's property. Plaintiff informed defendants that they had his stolen property and proposed that if the buggy, robe, and harness were returned, he would not pursue a claim for the value of the horses, as defendants had purchased them in good faith. Defendants agreed and returned plaintiff's property to him. Plaintiff then sued defendants for the value of the horses. In response, defendants argued that they had entered into a contract with plaintiff by agreeing to give plaintiff the horse and buggy in exchange for his promise not to sue. However, the Michigan Supreme Court held that plaintiff was entitled to pursue their claim for the value of the horses, stating that defendants "only did that, in surrendering the property, which in law they were compelled to do, and therefore there was no consideration for the promise on the part of the plaintiff not to reclaim the horse[s]." *Morgan*, 50 N.W. at 877. While the opinion is short, in reversing the lower court and concluding that defendants gave no consideration in exchange for plaintiff's promise not seek remuneration for the value of his horses, the Michigan Supreme Court apparently concluded that Seamen, as a thief, never had title to the horses, and thus could not have conveyed title to defendants. This appears to be the only explanation for the court's statement indicating that, as against plaintiff, the true owner, defendants had no interest in the buggy and equipment to exchange for plaintiff's promise not to seek to recover the value of the horses.

While *Morgan* is an old case, as far as we were able to determine it remains good law in the state of Michigan. *Morgan* stands for the proposition, long established at common law, that a thief has no title in the property that he steals. *See* Restatement (Second) of Torts § 229 cmt. d (1965); Bogert, Trust & Trustees § 476 (2d ed. 1978). Bogert, Trust & Trustees discusses this rule as it applies to proceeds from larceny, embezzlement, or conversion, providing:

> A thief does not ordinarily become the owner of property he steals; he has mere possession. If the stolen

Collier on Bankruptcy ¶ 541.06[1][a] (15th ed. 1999). Thus, if appellees are correct in arguing that debtor was their agent with respect to the $200,000 they initially transferred to him, then the money would not be property of debtor's bankruptcy estate.

In determining whether an agency has been created under Michigan law, the Michigan Supreme Court has stated that it will consider "the relations of the parties as they in fact exist under their agreements or acts." *Saint Clair Intermediate School Dist. v. Intermediate Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998) (internal quotations omitted). The court further provided:

> [I]n its broadest sense agency "includes every relation in which one person acts for or represents another by his authority." *Saums v. Parfet*, 270 Mich. 165, 170-71, 258 N.W. 235 (1935). We further recognized in *Saums* that "[t]he characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons." *Id.* at 172, 258 N.W. 235. Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent, *Capitol City Lodge No. 141, FOP v. Meridian Twp.*, 90 Mich. App. 533, 541, 282 N.W.2d 383 (1979), with respect to the matters entrusted to him.

*Saint Clair Intermediate School Dist.*, 581 N.W.2d at 716.

While the bankruptcy court concluded that debtor was not an agent of NPI, it never addressed the issue of whether debtor was an agent of the Kitchens with respect to the funds they sent directly to debtor prior to NPI's formation. As the bankruptcy court observed, the minutes reflected that the initial $200,000 sent to Newpower by the Kitchens was a loan to NPI. The parties also consistently referred to this money as a loan to the corporation and the memo section of the check stated that the money was for NPI. Further, during sentencing for the criminal charge of embezzlement debtor admitted that he operated as the Kitchen's agent. Debtor clearly did not

that the money the Kitchens sent was a loan to the corporation, the fact that the corporate minutes noted that it was a loan to the corporation, and the fact that the memo section of the check that the Kitchens sent stated that check was for NPI, and briefly described the property to be purchased. However, despite the fact that the court found that the $200,000 was a loan to the corporation, it concluded that the money was property of debtor's bankruptcy estate, because debtor deposited the money in his personal account.

Appellees disagree, arguing that debtor was acting as their agent with respect to the money they loaned to the corporation. As a result, appellees contend that the funds at issue remained their property while in the hands of debtor, and thus could not be included in debtor's bankruptcy estate. In support, appellees cite several cases, including *In re Zwagerman*, 115 B.R. 540, 547 (Bankr. W.D. Mich. 1990), *In re Crouthamel Potato Chip Co.*, 6 B.R. 501, 503 (E.D. Penn. 1980), and *In re Greenfield Direct Response, Inc.*, 171 B.R. 848, 857 (N.D. Ill. 1994), which support this proposition. Appellees are correct in pointing out that it is generally recognized that an agent does not take title to funds or property entrusted to him by his principal. Collier on Bankruptcy addresses the interaction of this principle with the bankrupcy code in some detail, observing:

> [A]n agency is a relationship arising from a contract, express or implied, by which one of the parties confides to the other the transaction or management of some business or other activity in the principal's name, or on the principal's behalf, and whereby the agent performs the anticipated act and renders an account thereof. [T]he title to the property remains in the . . . principal, and the . . . agent holds the property . . . for the owner's benefit. Consequently, it has been settled under the Code and prior law that absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the debtor's estate holds only the same interest, and the bailor or principal could recover the property or its proceeds.

property is found in his hands, it is recoverable by the injured party in a possessory action at law. There is no basis for a constructive trust as to the stolen property in the hands of the thief because of his lack of a property interest.

Bogert, Trust & Trustees § 476 at 119 (2d ed. 1978 & Supp. 1999) (citing cases recognizing this principle).

Appellees argue, however, that under Michigan law when title to property is obtained by fraud, the title is voidable, not void. In support, appellees cite *Jones v. Hicks*, 100 N.W. 2d. 243 (Mich. 1960) and *Cochran Timber Co. v. Fisher*, 157 N.W. 282 (Mich. 1916), which do contain statements to this effect. Appellees argue that this is significant, because Newpower pled guilty to embezzlement, which includes intent to defraud as a necessary element. *See* Mich. Comp. Laws § 750.174. As a consequence, appellees conclude that Newpower obtained voidable title to the money he embezzled. In support, by way of analogy, appellees point out that under Michigan's crime of false pretenses with intent to defraud—which also contains fraud as an element of the offense—title to the stolen property is viewed as passing to the debtor. Thus, appellees reason, by defrauding the Kitchens and NPI, debtor obtained at least voidable title to the funds he stole.

Appellees correctly observe that under Michigan law, the critical difference between larceny crimes and false pretense crimes is the passage of title. *See, e.g., People v. Malach*, 507 N.W. 2d 834, 837 (Mich. Ct. App. 1993) (discussing prior case law and observing that "[t]he distinction between the two offenses . . . depends entirely upon the intent of the victim: if the owner of the goods intends to keep title but part with possession, the crime is larceny; if the owner intends to part with both title and possession, albeit for the wrong reasons, the crime is false pretenses). However, appellees' attempt to analogize the offense of embezzlement to false pretenses fails. As the *Malach* court observed, an individual commits the crime of false pretenses when he fraudulently convinces

another to part with *both* possession of and title to property. In such a situation, the offender obtains voidable title to the property. *C.f.* Restatement (Second) of Torts § 229 cmt. d (1965) (observing that while a purchaser from or donee of a thief normally takes no title to the goods stolen, good faith purchasers may acquire a legal interest from a thief that fraudulently purchased a chattel).

In contrast, the offense of embezzlement involves the fraudulent appropriation of property of which the embezzler is rightfully in possession; the owner of the property retains title to the funds because he never intends for it to pass to the embezzler. *See Malach*, 507 N.W. 2d at 837; *see also* J.A. Bryant, Jr., Annotation, *Imposition of Constructive Trust in Property Bought with Stolen or Embezzled Funds*, 38 A.L.R. 1354 (1971) (observing that a thief takes no title to stolen or embezzled funds). Thus, for purposes of our analysis, it is irrelevant whether a thief obtains goods through embezzlement or larceny, as neither crime involves the voluntary passage of title to the thief. *See* 52A C.J.S. *Larceny* § 36 (1968); 29A C.J.S. *Embezzlement* § 8 (1965). Further, both qualify as theft crimes under the common law. *See* Black's Law Dictionary 1477 (6th ed. 1990) (defining common law theft to include swindling and embezzling and observing that "one who obtains property by lawful means and thereafter appropriates the property to the taker's own use is guilty of a 'theft'"); Bogert, Trust & Trustees § 476 at 119 (2d ed. 1978 & Supp. 1999) (treating larceny, embezzlement and conversion in the same manner).

Moreover, regardless of what crime debtor pled guilty to, it is clear that NPI never intended to pass title in the appropriated funds to debtor. As the district court observed, Newpower had only limited authority to move corporate funds for authorized corporate purposes, i.e., to purchase the agreed upon properties. Thus, the $382,463[2] that debtor

---

[2]This figure represents the $582,463 which the bankruptcy court held was subject to the automatic stay minus the $200,000 that the Kitchens sent directly to Newpower as a loan to NPI prior to its formal

subsequently imposed constructive trust does not remove property from the bankruptcy estate.

Judge Batchelder attempts to draw a factual distinction between this case and *In re Omegas* in that, "*In re Omegas* dealt with a situation wherein the debtor obtained property from a creditor in the ordinary course of business," whereas here the debtor was a thief and never had any claim to an equitable interest. But the debtor in *In re Omegas* was alleged to be guilty of fraud against the creditor and also did not have equitable title. Thus, there does not appear to be a relevant distinction here.

Judge Batchelder also appears to draw a distinction between whether or not the bankruptcy court can impose a constructive trust and whether the bankruptcy court can enforce a state court judgment. She says in her opinion, referring to *In re Omegas*, "[w]e held that it was not the province of the bankruptcy court to impose a constructive trust, but we were not faced with the question of either obtaining or enforcing a state court judgment holding that the equitable interest belonged to someone other than the debtor." This supposed distinction cannot matter, however, because the *In re Omegas* court specifically held that, "[u]nless a court has already impressed a constructive trust upon certain assets . . . the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor." 16 F.3d at 1449. Regardless of *who* might authorize the constructive trust, *In re Omegas* held that a constructive trust imposed after the bankruptcy petition will not remove property from the bankruptcy estate.

### C.

We next address the $200,000 that the Kitchens transferred to Newpower directly, in his name, prior to the formation of NPI. The bankruptcy court found that the $200,000 that the Kitchens sent Newpower was a loan to the corporation, even though the corporation was not yet in existence. The bankruptcy court reached this conclusion due to testimony

proceeding. *In re Omegas*, 16 F.3d at 1451–53. In *In re Omegas*, the court explained that:

> Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust. Therefore, a creditor's claim of entitlement to a constructive trust is not an "equitable interest" in the debtor's estate existing prepetition, excluded from the estate under § 541(d).

*Id*. at 1451. This apparently remains the case even if the state would view the constructive trust as coming into existence on the date the wrongful acts which gave rise to it took place. *Id.* at 1449 (stating that "[u]nless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor").

Because the Kitchens clearly have not had a court declare a constructive trust as to these proceeds prepetition, there is no action that the state court could take which would affect their disposition. Even if a state court were to find that the constructive trust arose at the time of the theft, *In re Omegas* states that this is irrelevant, as bankruptcy law controls. *See id*. at 1450–51 (concluding that for the purposes of Bankruptcy law, a constructive trust does not exist until judicially decreed; *see also id.* at 1453–55 (Guy, J. Concurring) (disagreeing with the majority's approach and instead relying on his belief that under Kentucky law constructive trusts do not come into existence until impressed by a court). Consequently, I must disagree with the majority opinion on this issue. I would retain the stay in bankruptcy as to these proceeds. To do otherwise is to ignore *In re Omegas*. The debtor had legal title; that is enough to include such proceeds in the bankruptcy estate. Under *In re Omegas*, a

embezzled directly from NPI was never property of debtor's estate. *Cf. Malach*, 507 N.W. 2d at 837; *Dennis v. United States*, 372 F. Supp. 563, 567 (E.D. Va. 1974) (observing that "[a]t common law, the passing of title turns as a general rule on the intent of the original owner"). However, the same cannot be said of property that debtor purchased for himself with the stolen money. The good faith seller from which the thief purchases property intends to pass both title and possession of the property sold to the thief, and obtains good title to the money the thief provides. *See, e.g.*, 53A Am. Jur. 2d *Stolen Money* § 23 (1996). Accordingly, the thief obtains legal title to the goods purchased, which thereby become part of his estate. *See* Mich. Comp. Laws § 440.2403 (providing that "[a] purchaser of goods acquires all title which his transferor had"); 1 Thomas M. Quinn, Quinn's Uniform Commercial Code Commentary and Law Digest, ¶2-403[A][2] (2d ed. 1991) ("This is the basic rule, and simply put, it provides that the purchaser gets whatever his seller had to give."); J.A. Bryant, Jr., Annotation, *Imposition of Constructive Trust in Property Bought with Stolen or Embezzled Funds* 38 A.L.R. 1354 (1971) (stating that "if a thief steals funds and uses them to purchase other property the owner cannot follow the funds, and he is left to his remedy against the thief, who, although he had no title to the stolen funds, does have title to the property purchased therewith"); *United States v. Brimberry*, 779 F.2d 1339, 1347–49 (8th Cir. 1985) (observing that "when an embezzler purchases property with stolen funds, the property may be subjected to a constructive trust in favor of the victim," but concluding that until this occurs, the victim merely has a claim to—rather than an interest in—such property); *Costell v. First National Bank of Mobile*, 150 So.2d 683, 686 (Ala. 1963) (noting that while a thief could not acquire title to stolen money, the thief could acquire title to land purchased with the stolen money); The Restatement (First) of Restitution: Conscious Wrongdoer § 202 (1937) (providing that when "a person wrongfully

---

incorporation. The proper disposition of the $200,000 will be discussed further below.

disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property," the others remedy is the enforcement of either a constructive trust or an equitable lien upon the proceeds).[3]

The original owner would normally not be without remedy in such a situation, as a constructive trust may be imposed on the proceeds held by the thief or embezzler. Bogert, Trust & Trustees § 476 at n.74 (2d ed. 1978 & Supp. 1999) (collecting cases standing for this proposition). However, under *In re Omegas*, a constructive trust is an equitable interest that exempts property from the bankrupt's estate under § 541(d), *only* if the trust is declared by a court in a separate *prepetition* proceeding or a state statute provides that the property is to be held in trust for a particular purpose. *In re Omegas*, 16 F.3d at 1448–53.

Thus, we hold that the bankruptcy court erred in concluding that money which debtor embezzled from NPI was part of debtor's bankruptcy estate. Consequently, we also hold that the debtor's bankruptcy estate has no property interest in such embezzled funds which are now in the hands of third parties.

---

[3] We note that *Morgan v. Hodges* does not provide authority to the contrary. As discussed above, in *Morgan* the original owner was suing the purchasers to recover the value of goods that the purchaser bought from the thief. The purchasers defended on the grounds that the original owner had entered into a contract not to sue the purchasers for the value of the stolen horses if they handed over the original owner's buggy and related equipment. The trial judge instructed the jury that such a contract could be found binding on the parties. The Michigan Supreme Court reversed and ordered a new trial, holding that no contract could exist as the purchasers only did that which they were required by law to do (*i.e.*, return the stolen buggy to the original owner). *See Morgan*, 50 N.W. at 877. Thus, the case merely stands for the general common law rule that a thief, or someone holding under a thief, takes no title in the stolen goods as against the true owner. *See* J.A. Bryant, Jr., Annotation, *Imposition of Constructive Trust in Property Bought with Stolen or Embezzled Funds*, 38 A.L.R. 3d 1354 (1971) ("[A] sale by a thief or by any person claiming under a thief does not vest *any* title in the purchaser as against the owner.") (emphasis added). The case does not speak to the issue of the title a thief has in the proceeds obtained with stolen funds.

As discussed, debtor never had a legal interest in such funds and appellants should be allowed to pursue third party recipients to recover embezzled funds and property traceable to such funds to the extent that the law allows.[4] Finally, with respect to items debtor obtained with the embezzled funds, while debtor did not obtain equitable title to these proceeds, he did obtain legal title; all that is necessary to include those assets in the bankruptcy estate. Consequently, we conclude such proceeds are part of debtor's bankruptcy estate and are thus subject to an automatic stay in bankruptcy under 11 U.S.C. § 362. *See In re Omegas*, 16 F.3d at 1451–53.

**B.**

I must disagree with my colleagues, however, in their assertion that the automatic stay should be lifted with respect to property that debtor purchased with stolen funds. In her separate opinion, which is the opinion of the court on this issue, Judge Batchelder observes that an automatic stay in bankruptcy may be lifted "where the debtor does not have an equity interest in the property and the property is not necessary to an effective reorganization." *See* 11 U.S.C. § 362(d). As Judge Batchelder's notes, we have concluded that the debtor did not obtain equitable title to the proceeds at issue and "there is no reorganization present in this case because debtor is liquidating his assets under Chapter 7." However, removing the automatic stay in bankruptcy serves no purpose with respect to property debtor purchased with stolen funds. As we noted above, debtor clearly has legal title to such funds. While the Kitchens could have these proceeds impressed with a constructive trust in the state court proceeding, this would not remove such proceeds from the bankruptcy estate. Under *In re Omegas*, a constructive trust must be impressed by a court prepetition to have any effect on the ownership of the property at issue in a bankruptcy

---

[4] In drawing this conclusion, we merely hold that debtor's bankruptcy estate has no property interest in such funds and express no opinion as to movants' right, vis-a-vis third parties, to such funds or property traceable to them.